

FILED

JAN 15 2013

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| SUNTRUST MORTGAGE, INC., | ) | |
| a Virginia Corporation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 3:13CV040 |
| | ) | |
| MEGA CAPITAL FUNDING, INC., | ) | |
| a California Corporation, | ) | |
| c/o Yong Sok Na, Registered Agent, | ) | |
| 5000 N. Parkway Calabasas, Suite 100 | ) | |
| Calabasas, CA  91302 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, SunTrust Mortgage, Inc. ("SunTrust"), by counsel, states the following for its

Complaint against Mega Capital Funding, Inc. ("Mega Capital"):

### PARTIES

1.   SunTrust is a Virginia corporation with its principal place of business located in

Richmond, Virginia.

2.   Mega Capital is a California corporation with its principal place of business located

in Calabasas, California.

### JURISDICTION AND VENUE

3.   Jurisdiction is proper under 28 U.S.C. § 1332(a) because there is diversity of

citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of

interest and costs.

4.   Jurisdiction and venue are proper in this Court because the parties entered into a

Correspondent Loan Purchase Agreement, dated December 26, 2006 (the "Agreement"), that

contains a forum selection clause recognizing, for the purpose of any action to enforce the Agreement, that Mega Capital submits to personal jurisdiction in the Commonwealth of Virginia and venue in this Court. This is an action to enforce the Agreement. A copy of the Agreement is attached as Exhibit 1.

## FACTUAL BACKGROUND

### The Correspondent Loan Purchase Agreement

5. On or about December 26, 2006, SunTrust and Mega Capital entered into the Agreement pursuant to which Mega Capital agreed to sell to SunTrust on a servicing released basis certain residential mortgage loans (the "Loans").

6. For each mortgage loan sold by Mega Capital to SunTrust under the Agreement, Mega Capital represented and warranted that:

> 17.1. Validity of Obligation. The Mortgage Loan documents have been duly executed by the Borrower and are valid and genuine and binding obligations of the Borrower. The Note is a valid and genuine, binding and enforceable negotiable instrument and is not subject to any claim s, defenses, setoffs or counterclaim. The Mortgage is valid and genuine, binding and enforceable and creates a lien of the priority agreed upon with Purchaser on the Secured Property, subject only to (a) liens for real estate taxes not yet due and payable, (b) special assessments not yet due and payable, or (c) covenants, conditions, easements or rights-of-way acceptable to Purchaser and satisfactory (i) under Fannie Mae/Fannie Mae Requirements or investor specific requirements, if the Mortgage Loan is a Conventional Mortgage Loan, or (ii) under GNMA Requirements, if the Mortgage Loan is a FHA/VA Mortgage Loan. The Mortgage is properly recorded in the land records of the appropriate jurisdiction, and no portion of the lien has been released or subordinated.

> . . .

> 17.3   Eligibility.

> . . .

17.3.1 <u>Eligibility of Conventional Mortgage Loans</u>.    Each Conventional Mortgage Loan is in full compliance with this Agreement and the Manual including, without limitation, all underwriting and credit requirements.

. . .

17.9   <u>Modification of Mortgage Loan Documentation</u>.    The terms of the Mortgage Loan have in no way been changed or modified . . . and the lien of the Mortgage has not been released or subordinated. All Mortgage Loan documentation submitted to Purchaser is genuine, complete and accurate, and all representations as to each Mortgage Loan are true and correct and meet the requirements and specifications of this Agreement and the Manual.

. . .

17.11  <u>Acceptable Investment</u>.    There are no circumstances or conditions with respect to the Mortgage Loan, the Secured Property, the Borrower, or the Borrower's credit standing than can reasonably be expected to: (a) cause private institutional investors to regard the Mortgage Loan as an unacceptable investment; or (b) cause the Mortgage Loan to become Delinquent; or (c) adversely affect the Mortgage Loan's value or marketability.

7.    Under the terms of the Agreement, Mega Capital agreed to repurchase mortgage loans in certain situations:

20.    <u>Repurchase Requirements</u>.    In addition to any other rights and remedies which Purchaser may have against Seller, Seller agrees to repurchase any Mortgage Loan (of, if the Mortgage Loan has been foreclosed upon, to purchase the Secured Property if it is still held by the Purchaser) within 10 calendar days after Purchaser's demand, resulting from the occurrence [of] any of the events specified in Section 20.1.

. . .

20.1   <u>Events Resulting in Repurchase Obligation</u>.  Seller's repurchase obligation under this Section 20 shall result from the occurrence of any of the following events with respect to a Mortgage Loan:

. . .

20.1.1 <u>Breach of Warranty or Representation</u>.  Seller breaches any representation or warranty made pursuant to this Agreement, provided that Seller shall have 15 calendar days following notice thereof from the Lender to cure any breach resulting  from a clerical error to the satisfaction of Purchaser. Such right to cure may be exercised only one time for each Mortgage Loan sold to Purchaser under this Agreement.

. . .

20.1.3 <u>False or Misleading Statements</u>.  Any information submitted by Seller or any statement, report or document furnished by Seller to Purchaser hereunder was incomplete, inaccurate, false, or misleading in any material respect when made or delivered, regardless of whether Seller had or should have had knowledge of the same at the time. This includes, without limitation, any information in any loan application submitted by any Borrower; any appraisal or evaluation report; any credit report; any title search or title insurance policy; and any condominium or PUD warranties made by Seller to Purchaser.

. . .

20.3 <u>Repurchase Price</u>.  In the event Seller is obligated to repurchase a Mortgage Loan under this Section 20, the repurchase price shall be the higher of (a) the unpaid principal balance or (b) the price paid by Purchaser (but not less than par), plus all accrued interest through and including the date of repurchase, together with reimbursement to Purchaser for any expenses or court costs incurred in connection with the repurchase of any such Mortgage Loan or investigating, researching and enforcing such repurchase including, without limitation, attorney's fees or other professional fees. Purchaser shall have the right to offset the amount owed by Seller to Purchaser pursuant to this Section 20 at any time, without prior notice, against the Purchase price for any Mortgage Loan or against any and all balances, credits, deposits, accounts, or monies of Seller then or thereafter held by Purchaser.

8.    Under the terms of the Agreement, Mega Capital also agreed to indemnify SunTrust

in certain situations:

22.    <u>Indemnity</u>.  Seller hereby agrees to indemnify, defend and hold harmless Purchaser and its successors, affiliates, and assigns, together with their respective officers, directors, employees and agents (collectively, the "Indemnitees"), from and against any and all claim, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs, court costs, fees and expenses relating to, arising out of, based upon, or resulting from (a) a breach by Seller of any representation, warranty, term, condition or obligation contained in or made pursuant to the Manual, this Agreement or any other agreement between Seller and Purchaser relating to the purchase of Mortgage Loans, (b) a failure by Seller to disclose any information that renders any such representation or warranty misleading or inaccurate, (c) any materially inaccurate, incomplete, false, or misleading information provided by or through Seller to Purchaser, (d) any misrepresentation made by or through Seller to Purchaser concerning any Mortgage Loan, or (e) Seller's ownership of or actions with respect to any Mortgage Loan.  This Section 22 shall survive any purchase, sale or

4

transfer of any Mortgage Loan or any interest therein by any of the Indemnitees, the liquidation of the Mortgage Loan, or any termination of this Agreement.

### The Perez Loan

9.      On or about September 25, 2007, Allen E. Perez ("Perez") obtained a mortgage loan (the "Perez Loan") secured by a deed of trust on the real property located at 2535 Moosedeer Dr., Ontario, California 91761 (the "Perez Property").

10.     On or about October 17, 2007, Mega Capital sold the Perez Loan to SunTrust.

11.     On or about November 21, 2007, SunTrust sold the Perez Loan to the Federal National Mortgage Association ("Fannie Mae").

12.     On or about May 17, 2010, Fannie Mae notified SunTrust of its duty to repurchase the Perez Loan due to misrepresentations of the borrower's income and employment status.

13.     Specifically, SunTrust determined that, despite representing on the application for the Perez Loan that he earned a monthly income of $8,950.00, Perez actually earned only $2,500.00 per month. In addition, SunTrust determined that Perez was never employed by the landscaping company listed on his application for the Perez Loan.

14.     These misrepresentations constituted a violation of the Agreement between SunTrust and Mega Capital, under which Mega Capital warranted that each loan was valid, genuine, and in full compliance with all underwriting and credit requirements and that no circumstances or conditions existed that could reasonably be expected to cause the Perez Loan to be regarded as an unacceptable investment.

15.     On or about July 21, 2010, SunTrust repurchased the Perez Loan from Fannie Mae for $407,000.00.

16.     By letter dated October 31, 2012, in accordance with Sections 17, 20, and 22 of the Agreement, SunTrust, by counsel, requested that Mega Capital repurchase the Perez Loan from SunTrust or otherwise indemnify SunTrust for its losses related to the Perez Loan. Mega Capital failed to do so.

17.     As of October 31, 2012, the outstanding balance on the Perez Loan, including principal, interest, and related costs and fees, was $447,590.60.

### The Bravo Loan

18.     On or about January 2, 2008, José Bravo ("Bravo") purchased the real property located at 433 E. 94th Street, Los Angeles, California 90003 (the "Bravo Property").

19.     In order to purchase the Bravo Property, Bravo obtained a mortgage loan in the amount of $292,100.00 (the "Bravo Loan"). The Bravo Loan was secured by a deed of trust on the Bravo Property.

20.     On or about January 18, 2008, Mega Capital sold the Bravo Loan to SunTrust.

21.     On or about February 21, 2008, SunTrust sold the Bravo Loan to Fannie Mae.

22.     On or about February 2, 2012, Fannie Mae demanded that SunTrust indemnify it for its losses associated with the Bravo Loan due to the borrower's failure both to disclose another mortgage obligation on the application for the Loan and to occupy the Bravo Property as represented when he applied for the Loan.

23.     Specifically, SunTrust determined that Bravo failed to disclose a $292,500.00 mortgage loan that he received in November 2007, two months prior to the closing of the Bravo Loan. The failure to disclose this obligation prevented SunTrust from obtaining an accurate understanding of the borrower's financial condition.

24.     In addition, despite Bravo representing that he would occupy the Bravo Property for a least one year after closing, public records indicated that he resided instead on Avalon Boulevard from September 2006 to August 2011.

25.     These misrepresentations constituted a violation of the Agreement between SunTrust and Mega Capital, under which Mega Capital warranted that each loan was valid, genuine, and in full compliance with all underwriting and credit requirements and that no circumstances or conditions existed that could reasonably be expected to cause the Bravo Loan to be regarded as an unacceptable investment.

26.     On or about June 6, 2012, SunTrust paid $204,162.01 to Fannie Mae to make it whole for its losses related to the Bravo Loan.

27.     By letter dated October 31, 2012, in accordance with Sections 17 and 22 of the Agreement, SunTrust – by counsel – requested that Mega Capital indemnify it for losses associated with the Garcia Loan.  Mega Capital failed to do so.

28.     As of November 27, 2012, SunTrust has suffered $204,162.01 in losses related to the Bravo Loan.

## The Chanax Loan

29.     On or about October 9, 2007, Dorene Chanax ("Chanax") obtained a mortgage loan (the "Chanax Loan") secured by a deed of trust on the real property located at 19616 Hartland Street, Reseda Area, California 91335 (the "Chanax Property").

30.     On or about October 29, 2007, Mega Capital sold the Chanax Loan to SunTrust.

31.     On or about November 21, 2007, SunTrust sold the Chanax Loan to Fannie Mae.

32.     On or about March 11, 2009, Fannie Mae notified SunTrust of its duty to repurchase the Chanax Loan due to misrepresentations related to Chanax's income.

33.     Specifically, SunTrust determined that Chanax's income was $4,174.00 per month, not $8,500.00 per month as represented on the application for the Chanax Loan.

34.     Chanax's misrepresentation of her income constituted a violation of the Agreement between SunTrust and Mega Capital, under which Mega Capital warranted that each loan was valid, genuine, and in full compliance with all underwriting and credit requirements and that no circumstances or conditions existed that could reasonably be expected to cause the Chanax Loan to be regarded as an unacceptable investment.

35.     On or about September 17, 2009, SunTrust paid $119,305.43 to Fannie Mae to indemnify it for its losses related to the Chanax Loan.

36.     By letter dated October 31, 2012, in accordance with Sections 17 and 22 of the Agreement, SunTrust, by counsel, requested that Mega Capital indemnify it for losses associated with the Chanax Loan.  Mega Capital has failed to do so.

37.     As of November 27, 2012, SunTrust has suffered $119,305.43 in losses related to the Chanax Loan.

### The Garcia Loan

38.     On or about December 19, 2007, Carmen Garcia ("Garcia") obtained a mortgage loan (the "Garcia Loan") secured by a deed of trust on the real property located at 31720 Avendia Ximino, Cathedral City, California 92234 (the "Garcia Property").

39.     On or about January 14, 2008, Mega Capital sold the Garcia Loan to SunTrust.

40.     On or about February 12, 2008, SunTrust sold the Garcia Loan to Fannie Mae.

41.     On or about May 12, 2010, Fannie Mae demanded that SunTrust repurchase the Garcia Loan due to an unacceptable appraisal for the Garcia Property.

42.     Specifically, Fannie Mae alleged that (1) the appraisal for the Garcia Property overvalued the Property by not taking into consideration the declining real estate market and (2) the comparable properties used in the appraisal were not, in fact, comparable.

43.     These flaws constituted a violation of the Agreement between SunTrust and Mega Capital, under which Mega Capital warranted that each loan was valid, genuine, and in full compliance with all underwriting and credit requirements and that no circumstances or conditions existed that could reasonably be expected to cause the Garcia Loan to be regarded as an unacceptable investment.

44.     On or about July 14, 2010, SunTrust repurchased the Garcia Loan from Fannie Mae.

45.     On or about February 23, 2011, SunTrust's duly appointed substitute trustee conducted a foreclosure sale for the Garcia Property and sold the Property to SunTrust for $357,322.00.

46.     On or about September 20, 2011, SunTrust sold the Garcia Property to a third party for $115,000.00 and applied the proceeds to the balance for the Garcia Loan.

47.     By letter dated October 31, 2012, in accordance with Sections 17 and 22 of the Agreement, SunTrust, by counsel, requested that Mega Capital indemnify it for its losses associated with the Garcia Loan.  Mega Capital failed to do so.

48.     As of November 27, 2012, SunTrust has suffered $352,132.66 in losses related to the Garcia Loan.

### The Lee Loans

49.     On or about November 19, 2007, Kapsoo Lee ("Lee") purchased the real property located at 5822 Burnham Ave., Buena Park, California 90621(the "Lee Property").

9

50.     In order to purchase the Lee Property, Lee obtained two mortgage loans from Mega Capital in the respective amounts of $412,000.00 (the "First Lee Loan") and $51,500.00 (the "Second Lee Loan") (together, the "Lee Loans"). The Lee Loans were each secured by a deed of trust on the Lee Property.

51.     On or about December 18, 2007, Mega Capital sold the Lee Loans to SunTrust.

52.     On or about December 31, 2007, SunTrust sold the First Lee Loan to Fannie Mae.

53.     On or about November 25, 2009, Fannie Mae notified SunTrust of its duty to repurchase the First Lee Loan due to the borrower's failure to disclose additional liabilities on the application for the First Lee Loan.

54.     Specifically, SunTrust determined that Lee failed to disclose four additional mortgages – totaling $1,689,750.00 – that opened prior to the closing of the Lee Loans. The failure to disclose these obligations on the applications for both Lee Loans prevented SunTrust from obtaining an accurate understanding of the borrower's financial condition.

55.     These misrepresentations constituted a violation of the Agreement between SunTrust and Mega Capital, under which Mega Capital warranted that each loan was valid, genuine, and in full compliance with all underwriting and credit requirements and that no circumstances or conditions existed that could reasonably be expected to cause the Lee Loans to be regarded as an unacceptable investments.

56.     On or about February 20, 2010, SunTrust repurchased the First Lee Loan from Fannie Mae for $464,137.02.

57.     On or about September 3, 2010, SunTrust sold the Lee Property to a third party for $315,000.00 and applied the proceeds from the sale to the outstanding balance for the First Lee Loan.

58.     By letter dated October 31, 2012, in accordance with Sections 17 and 22 of the Agreement, SunTrust, by counsel, requested that Mega Capital indemnify it for its losses related to the Lee Loans. Mega Capital failed to do so.

59.     As of November 27, 2012, SunTrust has suffered $244,713.40 in losses related to the Lee Loans, with $193,213.40 attributable to the First Lee Loan and $51,500.00 attributable to the Second Lee Loan.

### The Suh Loan

60.     On or about December 5, 2007, Jae Ho Suh ("Suh") purchased the real property located at 9681 Goss Road, Phelan Area, California 92371 (the "Suh Property").

61.     In order to purchase the Suh Property, Suh obtained a mortgage loan in the amount of $256,500.00 from Mega Capital (the "Suh Loan"). The Suh Loan was secured by a deed of trust on the Suh Property.

62.     On or about January 4, 2008, Mega Capital sold the Suh Loan to SunTrust.

63.     On or about February 12, 2008, SunTrust sold the Suh Loan to Fannie Mae.

64.     On or about June 1, 2012, Fannie Mae demanded that SunTrust reimburse it for its losses related to the Suh Loan due to the rescission of mortgage insurance for the Loan.

65.     Specifically, as part of its investigation of this make-whole demand, SunTrust determined that Suh misrepresented her income on the application for the Suh Loan. Rather than earning a monthly income of approximately $7,500.00 as represented, Suh instead earned just over $3,000.00 per month. As a result of this misrepresentation, the mortgage insurance for the Suh Loan was rescinded, rendering the Suh Loan an unacceptable investment.

66.     This misrepresentation, and the corresponding rescission of the mortgage insurance for the Suh Loan, constituted a violation of the Agreement between SunTrust and

Mega Capital, under which Mega Capital warranted that each loan was valid, genuine, and in full compliance with all underwriting and credit requirements and that no circumstances or conditions existed that could reasonably be expected to cause the Suh Loan to be regarded as an unacceptable investment.

67.     By letter dated November 9, 2012, in accordance with Sections 17 and 22 of the Agreement, SunTrust, by counsel, requested that Mega Capital indemnify it for its losses associated with the Suh Loan. Mega Capital failed to do so.

68.     As of November 27, 2012, SunTrust has suffered $167,475.08 in losses related to the Suh Loan.

### The Torres Loan

69.     On or about July 24, 2007, Modesta Torres ("Torres") purchased the real property located at 13379 Baylor Drive, Victorville, California 92392 (the "Torres Property").

70.     In order to purchase the Torres Property, Torres obtained a mortgage loan from Mega Capital in the amount of $288,000.00 (the "Torres Loan"). The Torres Loan was secured by a deed of trust on the Torres Property.

71.     On or about August 14, 2007, Mega Capital sold the Torres Loan to SunTrust.

72.     On or about September 24, 2007, SunTrust sold the Torres Loan to Fannie Mae.

73.     On or about June 7, 2010, Fannie Mae demanded that SunTrust make it whole for its losses associated with the Torres Loan due to misrepresentations related to the borrower's intent to occupy the Torres Property.

74.     Specifically, Fannie Mae alleged that, despite the Torres Loan being an owner-occupied transaction, Torres never occupied the Torres Property.

75.     This misrepresentation constituted a violation of the Agreement between SunTrust and Mega Capital, under which Mega Capital warranted that each loan was valid, genuine, and in full compliance with all underwriting and credit requirements and that no circumstances or conditions existed that could reasonably be expected to cause the Torres Loan to be regarded as an unacceptable investment.

76.     On or about June 7, 2010, SunTrust paid $205,243.44 to Fannie Mae to make it whole for its losses related to the Torres Loan

77.     By letter dated October 31, 2012, in accordance with Sections 17 and 22 of the Agreement, SunTrust, by counsel, requested that Mega Capital indemnify it for its losses associated with the Torres Loan.  Mega Capital failed to so so.

78.     As of November 27, 2012, SunTrust has suffered $205,243.44 in losses related to the Torres Loan.

### COUNT I: BREACH OF CONTRACT (REPURCHASE OF THE PEREZ LOAN)

79.     SunTrust incorporates the allegations set forth in paragraphs 1 through 17 above as if set forth fully herein.

80.     The parties' Agreement required Mega Capital to repurchase loans within 10 calendar days of demand by SunTrust should any Event of Default, as described under the Agreement, occur.

81.     Mega Capital has breached its obligations under the Agreement by selling to SunTrust the Perez Loan, which contained inaccurate, fraudulent or misleading information or otherwise violated the representations and warranties made by Mega Capital.

82.     Pursuant to Section 20 of the Agreement, Mega Capital is obligated to purchase the Perez Loan in the amount of $447,590.60, together with repayment of any fees received from

SunTrust in connection with the Perez Loan, payment of accrued interest through, and including the date of purchase, and reimbursement to SunTrust for all expenses or costs incurred in connection with investigating the Perez Loan and enforcing its repurchase, including attorney's fees.

83.    Pursuant to the Agreement, SunTrust has demanded that Mega Capital repurchase the Perez Loan, but Mega Capital has failed to do so, thereby further violating the Agreement.

84.    Because SunTrust still owns the Perez Loan, the precise amount of SunTrust's damages cannot otherwise be definitely or accurately determined.

85.    Therefore, SunTrust has no adequate remedy at law, and specific performance of the Agreement by Mega Capital is appropriate.

## COUNT II:  BREACH OF CONTRACT (INDEMNIFICATION OF THE PEREZ LOAN) (ALTERNATIVE)

86.    SunTrust incorporates the allegations set forth in paragraphs 1 through 17 above as if set forth fully herein.

87.    The parties' Agreement required Mega Capital, in selling the Perez Loan to SunTrust, to represent and warrant that the Perez Loan and its related documentation were "valid and genuine," were in full compliance with all underwriting requirements, and that there were no circumstances or conditions that would render the Perez Loan "an unacceptable investment" or "adversely affect its value or marketability."

88.    SunTrust's review of the Perez Loan revealed that Mega Capital had breached its obligations under the Agreement by selling to SunTrust a Loan that contained inaccurate, fraudulent and/or misleading information.  As a result, Mega Capital should indemnify SunTrust for its losses related to the Perez Loans under Section 22 of the Agreement.

89.     Specifically, Section 22 of the Agreement requires Mega Capital to indemnify SunTrust "from and against any and all claims, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs, court costs, fees and expenses relating to, arising out of, based upon, or resulting from" a breach of presentation or warranty; a failure to disclose information rendering such presentation or warranty "misleading or inaccurate"; "materially inaccurate, incomplete, false, or misleading information"; or "any misrepresentation made by or through" Mega Capital to SunTrust.

90.     As a result of Mega Capital' breach of the Agreement, SunTrust has been damaged in the amount of $447,590.60, plus accrued interest from the date of demand, reflecting losses incurred from the non-performance of the Perez Loan, together with all costs and attorney's fees associated with SunTrust's enforcement of its rights under the Agreement.

91.     Mega Capital is obligated to indemnify SunTrust for its losses associated with the Perez Loan.

## COUNT III: BREACH OF CONTRACT (INDEMNIFICATION FOR THE BRAVO, CHANAX, GARCIA, LEE, SUH AND TORRES LOANS)

92.     SunTrust incorporates the allegations set forth in paragraphs 1 through 8 and 18 through 78 above as if set forth fully herein.

93.     The parties' Agreement required Mega Capital, in selling the Bravo, Chanax, Garcia Lee, Suh and Torres Loans (together, the "Remaining Make-Whole Loans") to SunTrust, to represent and warrant that the Loans for Indemnification and their related documentation were "valid and genuine," were in full compliance with all underwriting requirements, and that there were no circumstances or conditions that would render each of the Remaining Make-Whole Loans "unacceptable investment[s]" or "adversely affect [their] value or marketability."

94.     SunTrust's review of the Remaining Make-Whole Loans revealed that Mega Capital had breached its obligations under the Agreement by selling to SunTrust the Other Loans that contained inaccurate, fraudulent and/or misleading information. As a result, Mega Capital should indemnify SunTrust for its losses related to the Remaining Make-Whole Loans under Section 22 of the Agreement.

95.     Specifically, Section 22 of the Agreement requires Mega Capital to indemnify SunTrust "from and against any and all claims, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs, court costs, fees and expenses relating to, arising out of, based upon, or resulting from" a breach of presentation or warranty; a failure to disclose information rendering such presentation or warranty "misleading or inaccurate"; "materially inaccurate, incomplete, false, or misleading information"; or "any misrepresentation made by or through" Mega Capital to SunTrust.

96.     As a result of Mega Capital's breach of the Agreement, SunTrust has been damaged in the amount of $1,293,032.02, plus accrued interest from the date of demand, reflecting losses incurred from the non-performance of the Other Loans, together with all costs and attorney's fees associated with SunTrust's enforcement of its rights under the Agreement.

97.     Mega Capital is obligated to indemnify SunTrust for its losses associated with the Remaining Make-Whole Loans.

16

WHEREFORE, SunTrust Mortgage demands judgment against Mega Capital Funding, Inc. as follows:

1.    As to Count I, specific performance in the form of repurchase of the Perez Loan immediately upon entry of judgment for the amount of $447,590.60, plus accrued interest and expenses, together with reimbursement of any premium paid to Mega Capital Funding, Inc. and pre-judgment interest as allowed by law.

2.    As to Count II, in the alternative, compensatory damages in the amount of $447,590.60, together with pre-judgment interest as allowed by law.

3.    As to Count III, compensatory damages in the amount of $1,293,032.02, together with pre-judgment interest as allowed by law.

4.    As to all Counts, reasonable attorney's fees, costs and expenses.

5.    As to all Counts, post-judgment interest and all costs allowed by law.

6.    For such other and further relief as is necessary and proper.

SUNTRUST MORTGAGE, INC.

By: _____
Robert D. Perrow (VSB No. 14766)
J.P. McGuire Boyd, Jr. (VSB No. 72753)
Steven P. Gould (VSB No. 80411)
Williams Mullen
P.O. Box 1320
Richmond, Virginia 23218-1320
Telephone: 804.420.6000
Facsimile: 804.420.6507
Email: bperrow@williamsmullen.com
Email: mboyd@williamsmullen.com
Email: sgould@williamsmullen.com
*Counsel for Plaintiff SunTrust Mortgage, Inc.*

19782886_2